Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, or rehear the parties or their representatives, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner with minor modifications as follows:
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner, and following, and in a Pre-Trial Agreement dated 21 February 1997, admitted as Stipulated Exhibit #1 as
STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to the provisions of the North Carolina Workers' Compensation Act.
2. At the time of the alleged incident on 14 August 1993, an employment relationship existed between plaintiff-employee and defendant-employer.
3. Kemper Risk Management Company was the carrier at risk.
4. Plaintiff-employee's average weekly wage is to be determined by an Industrial Commission Form 22, admitted as Stipulated Exhibit #2.
5. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of the parties.
6. Plaintiff's medical records are admitted as Stipulated Exhibit #3.
7. Defendant-employer's OSHA logs and Form 19s are admitted as Stipulated Exhibit #4.
8. The issues to be determined at this hearing are whether plaintiff suffered a compensable injury on 14 August 1993; and whether plaintiff supplied defendant with sufficient notice of an injury as required by the North Carolina Workers' Compensation Act.
***********
Based upon all of the competent evidence in the record, the Full Commission makes the following
FINDINGS OF FACT
1. Plaintiff is a 39-year-old male who was employed by defendant-employer as a side buffer machine operator on 14 August 1993. Defendant-employer is engaged in the business of manufacturing steel sinks; plaintiff's job duties included buffing these sinks with a compound until they shine. Plaintiff worked for defendant-employer approximately six (6) years.
2. Plaintiff finished high school, but he cannot read or write, although plaintiff can sign his name.
3. On 14 August 1993, plaintiff and a co-employee, Rodney Allen, lifted the basket which holds the sinks and turns in order for the buffer to shine the sink. The basket changes when the type of sink changes. On that date when plaintiff and Mr. Allen attempted to lift the basket which weighed over 250 pounds, it was too heavy and overpowered both employees. The basket fell. Plaintiff did not have time to bend his right knee and it twisted inward, causing an injury.
4. Plaintiff and Mr. Allen immediately notified James, their lead person at defendant-employer, of the injury. At the hearing plaintiff could not recall the lead person's surname. Plaintiff also experienced pain in his low back on 14 August 1993, after the basket incident which "snapped" his back.
5. Plaintiff continued working on that date and later spoke with Mr. Albright at defendant-employer concerning his back and knee. After plaintiff's work-related incident on 14 August 1993, plaintiff limped. Plaintiff still limped at the time of the hearing before the Deputy Commissioner.
6. Plaintiff underwent treatment from 15 September 1993 through 4 May 1994 for his back from Dr. Beck, a chiropractor. Plaintiff suffered from a right knee injury and lumbar strain as a result of his work related incident on 14 August 1993.
7. Plaintiff continued to have pain and problems with his back and right knee, although he continued to work for defendant-employer. In the spring of 1994, plaintiff communicated to Corbett Fields, defendant-employer's personnel director, that he was having to urinate excessively. Mr. Fields recommended plaintiff see a urologist. At some undetermined time plaintiff also told Fields about the 14 August 1993 incident and injury to his back and knee.
8. In late April of 1994 plaintiff was unable to get to work because his back and knee hurt him so badly. Plaintiff could not call in to defendant-employer each day from his home to inform them of this because he did not have a telephone at his home and plaintiff was unable to physically make it to the nearest telephone booth, approximately two miles away; although he testified that he did make the trip to the telephone booth on a Monday and called in to report his absence because of his pain on the first of five consecutive days that he was absent.
9. When plaintiff went back to work the second of May 1994, he was terminated for failing to come to work or call in for five (5) days.
10. Plaintiff sought treatment from Dr. Atassi, a neurosurgeon, in May, 1994, when he did not improve with chiropractic care. A June, 1994 MRI to his spine was normal, but plaintiff's MRI to his right knee revealed possible medial meniscus pathology. Plaintiff has not seen a medical provider concerning his back and knee problems since his June, 1994 visit with Dr. Atassi, but he has continuously received prescriptions for Darvocet from Dr. Atassi for his continuing pain arising out of his injury of 14 August 1993.
11. Plaintiff filed and collected Unemployment Insurance Benefits totaling $4,131.00 following his termination from defendant-employer. Those benefits were paid at a weekly rate of $243.00 for a period of 17 weeks.
12. The policy at defendant-employer when an employee is injured is for the employee to report the injury/accident to his lead worker or supervisor. It is then incumbent on that lead worker or supervisor to follow through with Human Resources.
13. Defendant-employer's OSHA log for 1993 does not record plaintiff's injury. The primary injuries/accidents during that year reported on the log involved cuts and lacerations.
14. After plaintiff was discharged from defendant-employer in May, 1994, he has been unable to find steady work due to his knee and back pain. Plaintiff has performed a few odd jobs where he was paid in cash. There is insufficient evidence of record to determine plaintiff's dates of employment and money he earned at these odd jobs. Plaintiff's church also helped him out some.
15. Plaintiff continued to suffer from back and knee pain arising out of his compensable injury of 14 August 1993 at the time of the hearing before the Deputy Commissioner.
16. On 14 August 1993 plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer.
17. Plaintiff filed an Industrial Commission Form 18 on 25 July 1995 with the Industrial Commission.
18. Plaintiff gave oral notice of the injury by accident to the defendant-employer within thirty (30) days of the injury when he reported it to the lead worker at defendant-employer's plant. This constituted reasonable excuse for not timely giving written notice and the defendants have not been prejudiced thereby.
19. Plaintiff's average weekly wage on 14 August 1993 was $414.54, resulting in a compensation rate of $276.37.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following
CONCLUSIONS OF LAW
1. On 14 August 1993 plaintiff sustained a compensable disabling injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. §97-2(6).
2. Plaintiff is entitled to have defendants provide all medical treatment arising from this injury by accident to the extent it tends to effect a cure, give relief or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25.
3. Plaintiff is entitled to temporary total disability benefits as a result of his compensable injury on 14 August 1993. There is insufficient evidence of record to determine exactly what dates plaintiff is entitled to temporary total or temporary partial disability compensation and the amount of wages he earned after his injury. Defendants are entitled to a credit for unemployment benefits plaintiff received. N.C. Gen. Stat. §§ 97-29; 97-30, and 97-42.1.
4. Plaintiff gave oral notice of the injury by accident to the defendant-employer within thirty (30) days of the injury when he reported it to the lead worker at defendant-employer's plant. This constituted reasonable excuse for not timely giving written notice and the defendants have not been prejudiced thereby. N.C. Gen. Stat. § 97-22.
5. The issue of what amount of permanent partial disability, if any, to which plaintiff may be entitled should be reserved for subsequent determination. N.C. Gen. Stat. § 97-31.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants shall pay all medical expenses incurred, or to be incurred, by plaintiff as a result of his compensable injury on 14 August 1993, when bills for same have been submitted to defendants and approved pursuant to procedures established by the Commission.
2. As there is insufficient evidence of record to determine the dates of temporary total disability compensation or temporary partial disability compensation plaintiff is entitled, and the amount of post-injury earnings, the parties are hereby ordered to confer on these issues. In light of this Opinion and Award, the parties should be able to come to an agreement on these issues. However, in the event the parties are unable to agree on the amount of disability compensation due plaintiff, the parties may submit additional evidence and the undersigned will determine this matter.
3. Defendants shall pay the costs.
4. Plaintiff's entitlement to permanent partial disability compensation shall be RESERVED for subsequent determination.
ORDER
Plaintiff shall submit himself to Dr. James Johnson, the orthopaedic surgeon to whom he was referred by Dr. Atassi, for an examination, evaluation, and recommendation of treatment, or if Dr. Johnson has no recommendation of treatment, then for a permanent partial disability rating.
 S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ______________ DIANNE C. SELLERS COMMISSIONER
S/ ______________ WILLIAM L. HAIGH DEPUTY COMMISSIONER